NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| THERESA HEARD, <br><br> Plaintiff, <br><br> v. <br><br> NANCY A. BERRYHILL, <br> Acting Commissioner of Social Security <br><br> Defendant. | Civil Action No.: 17-cv-1585 <br><br> **OPINION** |

**CECCHI, District Judge.**

**I.    INTRODUCTION**

Before the Court is Plaintiff Theresa Heard's appeal seeking review of a final determination by the Commissioner of the Social Security Administration ("Commissioner") denying her application for disability insurance benefits under Title II of the Social Security Act ("SSA"). The issue to be decided is whether the Commissioner's denial of benefits is supported by substantial evidence. For the reasons set forth below, the Administrative Law Judge's decision is vacated and remanded for further proceedings.

**II.   BACKGROUND**

**A.    Procedural History**

Plaintiff applied for disability insurance benefits on March 9, 2013, alleging disability as of December 9, 2011. (Tr.[1] at 214-21, 236). The application was denied initially on May 28, 2013

---

[1] "Tr." refers to the certified record of the administrative proceedings. (ECF No. 6).

and upon reconsideration on August 28, 2013. (*Id.* at 13). On April 29, 2015, a hearing was held before an Administrative Law Judge ("ALJ"). (*Id.* at 13-21). The ALJ issued a decision on July 8, 2015 finding that, despite having severe impairments, Plaintiff was able to perform jobs that exist in significant numbers in the national economy and was therefore not disabled, as defined by the SSA. (*Id.* at 22-35). Plaintiff requested review of the decision and the Appeals Council denied the request on January 4, 2017. (*Id.* at 1-5). On March 8, 2017, Plaintiff instituted this action. (ECF No. 1).

**B.  Background**

Plaintiff was forty-seven years old at the time of her administrative hearing. (Tr. at 32). She is divorced and currently lives with a roommate. (*Id.* at 46). At the hearing, Plaintiff testified that she relies on her roommate to help her get dressed, take showers, shop, and do laundry. (*Id.* at 42, 45). In the past, Plaintiff worked as an assembly line worker and a home health aide. (*Id.* at 51-55). She stopped working in 2013 due to her impairments. (*Id.* at 33-34). During the hearing, Plaintiff testified that she cannot sit or stand for more than five to ten minutes at a time. (*Id.* at 46). She also reported difficulties with lifting her arms, bending over, and moving her neck from side to side. (*Id.* at 36-39).

Plaintiff was in a motor vehicle accident on December 9, 2011 and alleges disability based on physical impairments stemming from this accident. (*Id.* at 35-39, 688). After the accident, Plaintiff complained of pain in her neck, back, left hip, left ankle, and left shoulder. (*Id.* at 816). On December 15, 2011, Plaintiff was evaluated at NJ Orthopedic Rehab and Pain Management Group ("NJ Orthopedic"). Thereafter, Plaintiff attended monthly appointments with Dr. David Adin at NJ Orthopedic from December 2011 through July 2014. (*Id.* at 816-95). Over this time period, Dr. Adin regularly examined Plaintiff, prescribed medications, administered epidural

2

injections, and recommended physical therapy. (*Id.*).

In March 2012, Plaintiff underwent an MRI of her lumbar and cervical spine. (*Id.* at 869-70). The MRIs revealed facet bony hypertrophy of the lower lumbar spine with disc bulges at L4-5 and L5-S1. (*Id.*). Furthermore, electrodiagnostic testing conducted in August 2012 was consistent with left L5 radiculopathy. (*Id.* at 879-80). According to Dr. Adin's treatment records, Plaintiff continued to experience radiating pain in her neck and back, resulting in numbness, tingling, and burning sensations. (*Id.* at 816-95). Dr. Adin notes that Plaintiff had restricted mobility of the neck and trunk, and also suffered from muscle spasms and tenderness in the paraspinal musculature. (*Id.* at 821-23, 828). Plaintiff also continuously experienced diminished appreciation of light touch to the left dorsal foot, as documented in Dr. Adin's records. (*Id.* at 816-95). In addition, Plaintiff saw a pain management physician, Dr. Binod Sinha, in May 2015. (*Id.* at 906). Dr. Sinha prescribed Plaintiff medications, recommended a home exercise program, and ordered updated MRIs of Plaintiff's cervical and lumbar spine. (*Id.* at 910). Furthermore, Dr. Sinha opined that Plaintiff could not sit or stand for longer than 15 minutes at a time. (*Id.* at 896).

Plaintiff also suffers from impairments in her left shoulder also stemming from the 2011 motor vehicle accident. An MRI of Plaintiff's left shoulder showed acromial and acromioclavicular impingement, a Super Labral tear from Anterior to Posterior, and distal supraspinatus tendinosis, but no full-thickness tears. (*Id.* at 868). Dr. Jason Baynes performed a left shoulder arthroscopy in August 2012 to repair the tear and impingement. (*Id.* at 880). Plaintiff still reported residual pain and restricted range of motion in her left shoulder more than one year after the surgery. (*Id.* at 849, 851).

Moreover, Plaintiff alleges that she has hypertension. She received treatment for hypertension at the Jewish Renaissance Medical Center and, according to treatment reports, was

3

consistently prescribed medication to alleviate her symptoms. (*Id.* at 411, 425-30). In July 2014, Plaintiff was hospitalized for malignant hypertension with blurred vision. (*Id.* at 751-60).

In addition to seeing her treating physicians, Plaintiff also underwent a consultative examination with Dr. Ronald Banger in May 2013 as part of her disability application. (*Id.* at 362-67). Dr. Bagner documented an impression of cervical sprain/strain, lumbosacral strain, and status postop surgery for labral tear. (*Id.*) He also noted that Plaintiff had pain upon movement of her lower back and cervical region. (*Id.* at 362-63).

## III. LEGAL STANDARDS

### A. Standard of Review

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. §§ 405(g) and 1383(c)(3). The Court is not "permitted to re-weigh the evidence or impose [its] own factual determinations," but must give deference to the administrative findings. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011); *see also* 42 U.S.C. § 405(g). Nevertheless, the Court must "scrutinize the record as a whole to determine whether the conclusions reached are rational" and supported by substantial evidence. *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978) (citations omitted). Substantial evidence is more than a mere scintilla, and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Chandler*, 667 F.3d at 359 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). If the factual record is adequately developed, substantial evidence "may be 'something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Daniels v. Astrue*, No. 4:08-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). In other words, under this deferential

4

standard of review, the Court may not set aside the ALJ's decision merely because it would have come to a different conclusion. *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 479 (3d Cir. 2007).

### B.  Determining Disability

Pursuant to the SSA, in order to be eligible for benefits, a plaintiff must show she is disabled by demonstrating an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Taking into account the plaintiff's age, education, and work experience, disability will be evaluated by the plaintiff's ability to engage in her previous work or any other form of substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). A person is disabled for these purposes only if her physical or mental impairments are of such severity that she is not only unable to do her previous work, "but also cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B). Decisions regarding disability will be made individually and will be "based on evidence adduced at a hearing." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000) (citing *Heckler v. Campbell*, 461 U.S. 458, 467 (1983)).

The SSA follows a five-step, sequential evaluation to determine whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520, 416.920. First, the ALJ must determine whether the plaintiff is currently engaged in gainful activity. *Sykes*, 228 F.3d at 262. Second, if she is not, the ALJ determines whether the Plaintiff has an impairment that limits her ability to work. *Id.* Third, if she has such an impairment, the ALJ considers the medical evidence

5

to determine whether the impairment is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). If it is, this results in a presumption of disability. *Id.* If the impairment is not in the Listings, the ALJ must determine how much residual functional capacity ("RFC") the applicant retains in spite of her impairment. *Id.* at 263. Fourth, the ALJ must consider whether the plaintiff's RFC is enough to perform her past relevant work. *Id.* Fifth, if her RFC is not enough, the ALJ must determine whether there is other work in the national economy the plaintiff can perform. *Id.*

The evaluation continues through each step unless it is determined at any point the plaintiff is or is not disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The plaintiff bears the burden of proof at steps one, two, and four, upon which the burden shifts to the Commissioner at step five. *Sykes*, 228 F.3d at 263. Neither party bears the burden at step three. *Id.* at 263 n.2.

## IV. DISCUSSION

Plaintiff argues that the ALJ made a number of decisional errors concerning "vocational science, obesity, the sequential evaluation, the pain evaluation, list listing and the RFC." (ECF No. 14 ("Pl. Br.") at 10). Specifically, Plaintiff alleges that the ALJ erred by: (1) relying on the Medical-Vocational Rules as a framework rather than obtaining Vocational Expert testimony; (2) failing to compare the combined effect of all of Plaintiff's severe impairments with one or more of the Commissioner's listings; (3) improperly formulating Plaintiff's RFC assessment; and (4) discrediting Plaintiff's subjective allegations of pain. (*Id.* at 18-40). The Commissioner argues that the ALJ "applied the correct legal standards and relied on substantial evidence to support a finding that Plaintiff was not under a disability during the relevant period within the meaning of the [SSA]." (ECF No. 20 ("Def. Br.") at 7).

### A. Summary of the ALJ's Findings

At step one, the ALJ found that Plaintiff met the insured status requirements of the SSA

6

and had not engaged in substantial gainful work activity since the onset date of the alleged disability. (Tr. at 15). At steps two and three, the ALJ decided that Plaintiff has the following severe impairments: obesity, cervical sprain/strain, lumbosacral strain, status post-surgical repair of the left shoulder labral tear, and uncontrolled hypertension. (*Id.*). The ALJ also concluded that Plaintiff's gastritis was not a severe impairment. (*Id.* at 16). Based on these findings, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets, either individually or in combination, any of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1. (*Id.*).

Next, the ALJ decided that Plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), except that Plaintiff can only lift and carry a maximum of ten pounds, sit for approximately six hours and stand or walk for approximately two hours in an eight-hour workday. (*Id.*). Furthermore, the ALJ found that Plaintiff can occasionally climb, balance, stoop, crouch, and crawl and is also able to occasionally push, pull, and reach overhead with her upper left extremity. (*Id.*). To reach this conclusion, the ALJ considered Plaintiff's musculoskeletal impairments, uncontrolled hypertension, obesity, and left shoulder impairment. (*Id.*). The ALJ evaluated medical evidence, including records from Plaintiff's treating physician Dr. David Adin, shoulder surgeon Dr. Jason Baynes, state agency consultant Dr. Ronald Bagner, and pain management specialist Dr. Binod Sinha. (*Id.* at 17-19). Based on this information, the ALJ concluded that Plaintiff's "cervical and lumbar impairments along with her obesity and hypertension impairments are fully accommodated by limiting her to a sedentary level of exertional activity . . . [and] the functional limitations resulting from the claimant's left shoulder impairment are accommodated by the aforementioned limitations." (*Id.* at 19).

Then, the ALJ found at step four that Plaintiff was unable to perform past relevant work.

7

(*Id.* at 20). At step five, however, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform based on her age, education, work experience, and residual functional capacity. (*Id.* at 20-21). Moreover, the ALJ found, in accordance with SSR 85-15 & 96-9p, that Plaintiff's non-exertional limitations do not significantly erode the occupational base of unskilled sedentary work. (*Id.* at 21). Therefore, the ALJ concluded that Plaintiff is not disabled as defined in the SSA. (*Id.*).

**B.  Analysis**

Plaintiff argues that the ALJ erred in determining her RFC by failing to properly consider Plaintiff's allegations regarding her physical limitations. (Pl. Br. at 33-37). In making an RFC determination, the ALJ must consider all evidence before her. *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000). Where there is contradictory evidence in the record, the ALJ must necessarily make credibility determinations. *Zirnsak v. Colvin*, 777 F.3d 607, 612 (3d Cir. 2014). In doing so, the ALJ must specifically identify and explain what evidence she found not credible and why she found it not credible. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994). An ALJ cannot reject evidence for an incorrect or unsupported reason. *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993).

Here, Plaintiff testified at the hearing that she can only sit for five to ten minutes at most before experiencing discomfort and pressure. (Tr. at 38, 46). After five to ten minutes, Plaintiff alleges that she either needs to change positions or stand up to alleviate her pain. (*Id.*). She also stated that she experiences pain in her lower back when standing or walking. (*Id.* at 38). Yet, the ALJ discredited Plaintiff's assertions and concluded that "[w]hile the claimant alleged that she can only sit for 15 minutes at a time and overall alleged more severe limitations than have been incorporated in the [RFC], there is no medical support for her allegations." (*Id.* at 19). The ALJ

8

continued, stating that "[t]he evidence does not include an opinion statement from a treating physician that supports the severity of her allegations, nor did the claimant report having such difficulties with activities of daily living, standing or walking as she testified, to her treating physician." (*Id.*). Subsequently, the ALJ found that Plaintiff had the RFC to perform unskilled sedentary work. (*Id.* at 20). According to the Social Security Administration, a sedentary job should require no more than approximately two hours of standing or walking per eight-hour work day, and sitting should typically amount to six hours per eight-hour work day. *See Mason*, 994 F.2d at 1065 (citing SSR No. 83–10 (1983)).

After reviewing the record, the Court finds that the ALJ's reasons for rejecting Plaintiff's assertions are unsupported by the evidence. First, the Court will address the ALJ's finding that "there is no medical support" for Plaintiff's allegations that she cannot sit for long periods of time. According to objective medical evidence in the record, Plaintiff suffers from lumbar and cervical impairments, including disc bulges at the L4-L5 and L5-S1 level. (Tr. at 869-70). Electrodiagnostic testing showed that Plaintiff also has left L5 radiculopathy. (*Id.* at 827). Plaintiff's treating physician, Dr. Adin, saw Plaintiff on a monthly basis from December 2011 through July 2014. (*Id.* at 816-95). Over the course of her treatment with Dr. Adin, Plaintiff complained of intense back pain when sitting. Specifically, in December 2011, Dr. Adin wrote that "[s]itting, bending, standing are quite problematic" for Plaintiff. (*Id.* at 816). He continued that Plaintiff "has trouble sitting in an upright pose as she has to rest on her right buttock[] to support herself." (*Id.*). In 2012, Dr. Adin remarked that "prolonged sitting aggravate[s] her low back pain." (*Id.* at 820).

Moreover, during Dr. Adin's monthly examinations, he conducted tests of Plaintiff's lumbar and cervical spine, including sitting root tests and Kemp's standing tests. (*See, e.g., id.* at

9

833, 835, 837, 839, 841, 853). These tests consistently showed positive results, indicating that Plaintiff experienced pain during those examinations. (*Id.*). Furthermore, Dr. Adin consistently noted that his examination of Plaintiff's lumbar spine indicated paraspinal tenderness and that she frequently experienced painful muscle spasms within the parapsinal musculature. (*Id.* at 820, 821, 822, 828, 830, 832, 856). Yet, the ALJ did not mention Dr. Adin's extensive medical records when discussing her reasons for rejecting Plaintiff's assertion that she could not sit for long periods of time.

Additionally, the ALJ did not indicate that she considered Dr. Bagner's report before concluding that there was no medical support for Plaintiff's allegations. Dr. Ronald Bagner, a state agency medical consultant, conducted an examination of Plaintiff in May 2013. (*Id.* at 362-67). Dr. Bagner noted twice in his report that Plaintiff was "uncomfortable in a seated position." (*Id.* at 362, 363). Furthermore, during his physical examination of Plaintiff, Dr. Bagner found that "[t]here is pain on straight leg raising on the left at 50 degrees in lying position, also present in the seated position. Pain on straight leg raise on the right at 50 degrees in the lying position, also present in the seated position." (*Id.* at 363). Although this report suggests that there may be medical support for Plaintiff's allegations, the ALJ did not include this information when rejecting Plaintiff's claims.

Second, contrary to the ALJ's assertion, evidence in the record shows that Plaintiff consistently reported having difficulties with standing and walking to her treating physician. In discussing Plaintiff's RCF assessment, the ALJ found that "[t]he evidence does not include an opinion statement from a treating physician that supports the severity of her allegations, *nor did the claimant report having such difficulties with activities of daily living, standing or walking as she testified, to her treating physician.*" (*Id.* at 19) (emphasis added). According to Dr. Adin's

records, however, Plaintiff consistently complained of pain while standing or walking. For example, Dr. Adin wrote after a 2011 visit that Plaintiff "has trouble walking as she has difficulty standing at a neutral pose of her low back." (*Id.* at 816). Again, Dr. Adin's notes from March 2012 state that Plaintiff's "low back pain is worse with prolonged standing, walking, bending at her waist, which radiates in both buttocks, worse on the right side." (*Id.* at 821). In August 2013, Dr. Adin recorded that Plaintiff "continues to suffer from low back pain predominantly axial in distribution, worse with standing and walking." (*Id.* at 849; *see also id.* at 848).

Furthermore, Dr. Binod Sinha, a pain management specialist, examined Plaintiff in May 2015. (*Id.* at 906-10). Based on his examination, Dr. Sinha concluded that although Plaintiff's impairments do not limit her ability to work entirely, Plaintiff "is not able to sit [or] stand for longer than 15 minutes." (*Id.* at 896). While the ALJ decided to accord Dr. Sinha's testimony little weight, the Court includes Dr. Sinha's finding here to further demonstrate that Plaintiff did complain of increased back pain when sitting or standing and that Plaintiff's physicians were cognizant of her complaints.

Accordingly, the Court finds that the ALJ's decision to discredit Plaintiff's complaints, and specifically the ALJ's conclusion that "there is no medical support for her allegations," is not supported by substantial evidence. In *Cotter v. Harris*, the ALJ discounted the claimant's assertions about his impairments but failed to explain or even recognize that there was medical evidence that may have supported the claimant's allegations. 642 F.2d 700, 707 (3d Cir. 1981). The Third Circuit remanded the case, finding that the ALJ's failure "to explain his implicit rejection of this evidence or even to acknowledge its presence was error." *Id.* Similarly, the ALJ here failed to acknowledge that there were multiple sources of evidence that may have supported Plaintiff's assertions. Therefore, this matter must be remanded based on this error.

The Commissioner retrospectively argues that, although the ALJ found that Plaintiff could sit for approximately six hours and stand or walk for approximately two hours per eight-hour workday, "if Plaintiff wishes to change positions at times, to relieve pain, there is no reason she cannot do so." (Pl. Br. at 17). The ALJ, however, does not discuss Plaintiff's need to move around freely in her RFC determination because the ALJ did not properly consider evidence that suggested Plaintiff may require such accommodation. Therefore, even if the Commissioner's assertion were true, the ALJ nevertheless failed to recognize that certain medical evidence in the record may have supported Plaintiff's claims and to explain how that evidence affected the RFC determination. *See, e.g., Cotter,* 642 F.2d at 707 (holding that the ALJ's decision must be remanded because the ALJ failed to acknowledge or adequately explain his rejection of relevant record evidence that supported the claimant's allegations). Because the ALJ did not properly consider and explain pertinent medical evidence when making the RFC determination, this matter must be vacated and remanded for further proceedings. The Court need not address Plaintiff's additional arguments as this matter is being remanded.

## **Conclusion**

For the foregoing reasons, the ALJ's decision is hereby vacated and remanded for further findings consistent with this Opinion. An appropriate Order accompanies this Opinion.

DATED: Feb 28, 2019

_____
**CLAIRE C. CECCHI, U.S.D.J.**